IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RAYMOND IDEMUDIA AIGBEKAEN,**<br><br>Petitioner,<br><br>v.<br><br>**ACTING WARDEN OF FCI GREENVILLE,**<br><br>Respondent. | Case No. 3:22-CV-02599-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Raymond Aigbekaen, a federal prisoner in the Bureau of Prisons ("BOP"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the loss of 27 days of good conduct credit against his sentence, imposed as a disciplinary sanction. (Doc. 1). Respondent filed a response in opposition to Aigbekaen's Petition. (Doc. 26).

### FACTUAL BACKGROUND

A jury in the United States District Court for the District of Maryland convicted Aigbekaen on six counts related to the interstate sex trafficking of a minor. *United States v. Aigbekaen*, No. 1:15-cr-00462-JKB-2, at Doc. 189; *see also United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), *cert. denied*, 141 S. Ct. 2871 (2021). On February 7, 2017, he received an aggregate 180-month sentence. *United States v. Aigbekaen*, No. 1:15-cr-00462-JKB-2, at Docs. 222, 228. Aigbekaen has been moved to several institutions within BOP. He currently resides at Federal Correctional Institution ("FCI") Englewood in Littleton, Colorado. (Doc. 23). He filed this habeas petition while incarcerated at FCI Greenville for a disciplinary

sanction imposed at FCI Loretto.[1]

On May 26, 2022, two corrections officers at FCI Loretto intercepted Aigbekaen on his way to education. (Doc. 26-2, pp. 1, 4, 10, 18). They ordered Aigbekaen to return to his unit to fix his clothing. (*Id.*). Aigbekaen argued with them and refused to return to his unit despite three more direct orders to do so. (*Id.*). One of the officers began escorting Aigbekaen to a supervisor's office. (*Id.*). On the way, Aigbekaen shifted towards the escorting officer, who perceived that Aigbekaen turned towards him in an aggressive manner with closed fists. (*Id.*). The officer pinned Aigbekaen against the wall and restrained his hands. (*Id.*). Then, the pair proceeded without further incident. (*Id.*).

The interaction at issue was recorded on video, albeit without audio, and Respondent submitted the footage to the Court *ex parte* for *in camera* review.[2] At first, the video depicts a busy hallway with inmates and correctional officers ambling in various directions. When Aigbekaen appears, one other inmate precedes him in the hallway, and two correctional officers (Guard 1 and Guard 2) stand leaning against the wall. As Aigbekaen approaches, he carries a stack of papers and his shirt appears untucked. Guard 1 addresses him and points back in the direction from which he came. The other inmate slows down, turns to look at Aigbekaen, then continues down the hall turning the corner. The only people visible in the footage at this point are Aigbekaen and both guards. Aigbekaen starts tucking his shirt and puts on a face mask. Guard 1 gestures several more times, pointing directly at Aigbekaen and

---

[1] Despite Aigbekaen's transfer from FCI Greenville, a habeas petition under § 2241 is properly filed in the district of confinement at the time of filing, and the warden of FCI Greenville, T. Lillard, is the appropriate Respondent in this action. *See In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021). Moreover, this Court appropriately retains jurisdiction of the petition. *See al–Marri v. Rumsfeld*, 360 F.3d 707, 712 (7th Cir. 2004).
[2] Because Aigbekaen is incarcerated, he has not been served with a copy of the video to protect the prison's interests in safety and security.

down the hallway. It appears that Aigbekaen and Guard 1 were conversing.

Next, Aigbekaen walks slowly towards both guards, and they turn towards him ceasing to lean against the wall. As Aigbekaen sifts through the papers in his hands, he points in the direction he was originally heading. He continues to talk to the guards and uses one arm to gesture while holding his materials in the other. Again, Guard 1 points back down the hall in the other direction. As the interaction progresses, a third correctional officer, Guard 3, walks into the frame pushing a large rolling cart. Guard 2 moves to open a door for Guard 3. Simultaneously, Aigbekaen continues to shuffle through his paperwork and gestures again down the hall in the direction he wants to go. He gets more animated and points to the cart, down the hall, and in several directions. Two other inmates begin walking down the hall from opposite directions, and both pass around the cart and exit the hallway without stopping.

Aigbekaen continues to talk to Guard 1 and gestures down the hall. Guard 2 now walks towards Aigbekaen, interjects in the conversation, and points in the direction from which Aigbekaen originally came. Aigbekaen shakes his head. The cart remains in the middle of the hallway, and Guard 3 stands in a nearby doorway before walking away and down the hall. Both guards and Aigbekaen continue to talk and gesture in opposite directions. Guard 2 signals for Aigbekaen to turn around towards the wall. Aigbekaen complies, and Guard 2 takes the paperwork, handing it to Guard 1, who sets the stack on the cart. Again, Aigbekaen points down the hall. Guard 2 grabs Aigbekaen's elbow to walk him back down the corridor away from the camera. Guard 1 picks up Aigbekaen's stack of papers from the cart and follows behind. Aigbekaen lifts his hand above his head, which is visible for only a split

second. It is difficult to determine with certainty, but in the quick glimpse, Aigbekaen's hand appears to be balled into a fist as he raises his arm. He places his arm back down at his side and his hand appears open again. Then, Aigbekaen flinches and abruptly turns toward Guard 2 bending his arm in front of his body. As their backs face the camera, Aigbekaen's hand is not visible in the frame, but the two were facing each other. Guard 2 pushes Aigbekaen towards the wall to restrain him.

Guard 1 catches up to them, and Guard 3 reenters the frame at the top of the hallway walking towards the incident. Guard 1 sets Aigbekaen's stack of papers on the floor. No one else is in view at this time. But shortly after, as the guards restrain Aigbekaen, other staff members enter the hallway. An inmate turns the corner into the hallway, but Guard 3 instructs him to turn around. Now restrained, Aigbekaen is walked out of the hallway and around a corner. Another staff member picks up the papers from the floor and follows. The entire incident, from the time Aigbekaen enters the frame to the time he exits, lasts under four minutes. And four minutes later, the video shows guards escorting a restrained Aigbekaen back up the hallway and through an office door.

Later that day, the correctional officers involved drafted an incident report charging Aigbekaen with violation of Offense Code 307, "Refusing to Obey an Order." (Doc. 26-2, p. 1). Shortly after issuing the original report, officers rewrote the report to include another charge under Offense Code 224A, "Assaulting without Serious Injury (Attempting)." (*Id.* at p. 4). The rewritten report was served on Aigbekaen the day of the incident. (*Id.*). The matter was referred to the Unit Discipline Committee ("UDC") and to the Discipline Hearing Officer ("DHO"). (*Id.* at pp. 5-6). In response to the report, Aigbekaen claimed that he did not attempt

to assault anyone, but rather informed the officer his unit door was locked and he needed to go to education because he had a court deadline. (*Id.* at p. 5). He suspected the incident was racially motivated. (*Id.*). The day after the incident, on May 27, 2022, Aigbekaen received a Notice of Discipline Hearing Before the DHO and a description of his rights during such hearing, which he signed. (*Id.* at pp. 7-8).

The DHO suspended the matter pending a re-write of the incident report for clarification, and the officers added more details of Aigbekaen's turn towards the escorting guard and his aggressive disposition. (*Id.* at pp. 10, 12). This final revised incident report was served on Aigbekaen on June 6, 2022. (*Id.*). The day after he received the updated report, the UDC had a rehearing. (*Id.* at p. 11). At this hearing, Aigbekaen reiterated that he did not attempt to assault anyone, suggested the incident was racially motivated, and accused the officers of making a false statement. (*Id.*). The incident was again referred to the DHO, and the warden approved an extension of time for that hearing to occur. (*Id.* at pp. 12-13). Aigbekaen received another Notice of Discipline Hearing Before the DHO and a description of his rights, which he signed. (*Id.* at pp. 14-15). Aigbekaen requested Dr. Rabinowitz, Chief Psychologist, as a staff representative, and sought to call John Bartley, another inmate, as a witness to testify that the officer let him go to education and sent Aigbekaen back to the unit. (*Id.* at pp. 15-16).

The DHO held a hearing on the morning of July 13, 2022. (*Id.* at p. 16). He authored a report describing his findings, which was delivered to Aigbekaen in October 2022.[3] (*Id.* at

---

[3] The DHO report was dated September 9, 2022. (Doc. 26-2, p. 20). While not immediate, Aigbekaen received a copy of the report on October 20, 2022. (*Id.*). Apparently, Aigbekaen's transfer delayed the delivery of the report. (*Id.* at p. 21).

pp. 16-20). The report included commentary from Aigbekaen that, "This is all a lie, they were letting other inmates walk right by me with clothing not being worn properly. MY clothes were perfect, staff are lying and harassing me." (*Id.* at pp. 17-18) (emphasis in original). As for witnesses, the report indicates that another inmate, John Bartley, appeared and stated, "I was in the hallway before this all happened, I was not a direct witness to this incident. I am not sure why he even called me as a witness." (*Id.*). After considering the officers' reports, Aigbekaen's statements, witness statements, and the video footage from the main corridor, the DHO found the act was committed as charged. (*Id.* at pp. 18-19). Ultimately, the DHO sanctioned Aigbekaen with the loss of 27 days of good conduct time credit, 14 days of disciplinary segregation, and 180 days without email, phone, and visitation privileges. (*Id.* at p. 19). As per his rights, Aigbekaen appealed the DHO findings and the sanctions against him. (*Id.* at pp. 21-26). His appeals were rejected. (*Id.*).

## APPLICABLE LAW

Federal prisoners can challenge the loss of good conduct credit through a petition for habeas relief under 28 U.S.C. § 2241. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Incarcerated individuals retain rights under the Due Process Clause, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). At minimum, due process in disciplinary proceedings requires: (1) advance written notice of the charges at least 24 hours before the hearing, (2) an opportunity to be heard before an impartial decision maker, (3) the opportunity to call witnesses and present documentary evidence in his or her defense when consistent with institutional safety or correctional goals,

and (4) a written statement as to the evidence relied on and the reasons for the decision. *Wolff*, 418 U.S. at 564-66; *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

In addition to procedural safeguards, the findings of the DHO must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard poses a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs*, 485 F.3d at 941 ("once the meager threshold has been crossed our inquiry ends"). A district court is not required to examine the entire record, reweigh the evidence, or reassess credibility. *Hill,* 472 U.S. at 455; *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996). "Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56 (emphasis added).

Accordingly, a court can overturn the DHO's decision "only if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d at 1077. And "only evidence that was presented to the [DHO] is relevant" to the determination of whether there was "some evidence." *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992).

## DISCUSSION

Aside from claiming he is innocent of the offenses, Aigbekaen's Petition outlines several due process issues with his disciplinary hearing, including an untimely UDC hearing, false statement in the charging documents, bias of the DHO, improper notice of the charges, inability to call witnesses for the hearing, inability to present documentary evidence, and his

staff representative's inability to review video evidence before the hearing. (Doc. 1, pp. 3-11). Aigbekaen also complains that he was not appropriately charged with or given notice of a violation of Code 224 because no physical injury was attempted and he made no physical contact with the guard. (*Id.* at p. 6). In addition, he urges that he suffers from mental illnesses rendering him incompetent and not culpable for his actions. (*Id.* at p. 10).

As an initial matter, after review of the record and video footage, it is obvious that the DHO's findings are supported by "some evidence." Aigbekaen's version of events do not completely comport with the video. Clearly, the guards directed Aigbekaen to return in the direction from which he came. He refused to do so. While exchanging words with the guards, Aigbekaen gestured in the direction in which he wished to proceed. As the conversation progressed, the gesturing continued becoming more animated. The guards took his papers, turned him around, and escorted him back down the hall. While walking in close proximity to the escorting guard, Aigbekaen raised his hand, lowered it, jerked, bent his arm with his hands in front of him, and turned towards the guard. Simultaneously, the escorting guard turned towards Aigbekaen and immediately pinned him against the wall to secure him.

In an attempt to minimize the situation, Aigbekaen highlights that other guards did not deploy pepper spray against him or hit a panic button. But several staff members appeared on the scene to assist as Aigbekaen was being restrained. Aigbekaen also claims that he could not ball his fists because he was carrying papers, but the video confirms that the guards took his papers before this incident.

Paired with the incident report, in which the guards state that Aigbekaen turned in an aggressive manner and had a closed fist, there is certainly "some evidence" to support both

charges of refusing to obey an order and attempted assault without serious injury. The Seventh Circuit has found that a correctional officer's incident report alone can satisfy the "some evidence" standard. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (stating that a "[disciplinary] report alone provides 'some evidence' for the [board's] decision"). But here, there was more. The DHO relied on the incident report and the video to reach his decision. In light of the video, he also explained that he found Aigbekaen's version of events to lack credibility. The DHO's review and weighing of the evidence was reasonable and sufficiently supported.

Turning to his various procedural due process challenges, Aigbekaen argues that he did not receive proper notice of the charge under Code 224. He claims that the incident report did not allege that any contact was attempted or accomplished, it simply states that he turned around in an aggressive manner. Notably, the incident report stated he turned toward the officer in an aggressive manner with a closed fist. Aigbekaen correctly recalls that he did not accomplish physical contact with the guard, as the video does not show any contact after cocking his arm and turning towards the officer. But a violation of Code 224 includes "less serious physical injury or contact has been attempted or accomplished by an inmate." 28 C.F.R. § 541.3, Table 1, No. 224 . The description does not require that the inmate land a punch or take a full swing and miss. Based on the code, the Court sees no reason that turning towards a guard in close proximity and raising a fist or hand in an aggressive manner should not fall under the category of attempted contact or physical injury. Aside from the incident description, the charge is explicitly listed as one of the alleged offenses. Notice is meant to clarify what the charges are and give the charged party a chance to marshal the facts and

prepare a defense. *Wolff*, 418 U.S. at 564. Here, the incident report provided Aigbekaen sufficient notice of this particular charge.

Next, Aigbekaen asserts that his UDC hearing was untimely. He had two UDC hearings—one on May 27, 2022, the day after the incident, and one on June 7, 2022, after the report was rewritten for clarification and delivered to him. The UDC received an extension from the warden to perform the second hearing pending the incident report's clarification. Aigbekaen points to prison regulations that require a hearing to be held in five days, which can be extended with the warden's permission. He argues, however, that the extension caused his UDC hearing to occur outside the mandated timeline. Though prison regulations dictate certain procedures, he is not constitutionally entitled to adherence to these timelines. Due process merely requires that the offender be given written notice of the alleged violations at least 24 hours before a disciplinary hearing. *See Wolff*, 418 U.S. at 564-66. He makes no claim that he did not receive such advanced notice, and it appears that he did.

As to the requirement for a hearing before an impartial decision maker, Aigbekaen claims that the DHO exhibited bias. He boldly charges the DHO with holding a grudge against black inmates based on rumors circulated in the prison concerning prior incidents with the DHO's wife. Aigbekaen also includes several taunting quotes that the DHO purportedly said to him. These allegations find no support in the record. Certainly, "crediting one version of the facts over another does not constitute impermissible bias." *Keller v. Cross*, 603 F. App'x 488, 491 (7th Cir. 2015). Moreover, the DHO was impartial in the sense that he was not involved in the incident. *See Wolff,* 418 U.S. at 592 (Marshall, J., concurring in part) ("[I]n my view due process is satisfied as long as no member of the disciplinary board has

been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case."). The Seventh Circuit has identified impartiality in situations where the decisionmaker was a witness to the incident and where the offender had pending legal action against the decision maker in which the decision maker had substantial personal involvement. *Merritt v. De Los Santos,* 721 F.2d 598, 600-01 (7th Cir. 1983); *Redding v. Fairman*, 717 F.2d 1105, 1112-13 (7th Cir. 1983). Neither rationale applies here.

Moving on, Aigbekaen also contends that he was unable to call witnesses to testify on his behalf as required by his due process rights. Before the hearing, Aigbekaen requested to have inmate John Bartley present to testify that the officers allowed him to proceed to education while sending Aigbekaen back to the unit. The DHO's report indicates that Bartley did appear and testified that he was in the hallway before the incident but did not witness anything. Looking into Aigbekaen's assertions, the Court notes that the BOP's online inmate locator tool indicates that John Bartley was "not in BOP custody as of: 07/12/2022."[4] To Aigbekaen's point, his disciplinary hearing was held on July 13, 2022—a day after Bartley appears to have been released. The Court acknowledges this anomaly. Maybe there is a reasonable explanation—perhaps, the DHO interviewed Bartley prior to the hearing as part of an initial investigation. Or maybe there is no reasonable explanation.

But, ultimately, the Court need not resolve this controversy. Even if Bartley appeared and testified exactly as anticipated by Aigbekaen, such testimony would not have been exculpatory or helpful to him. The video clearly shows no inmate—or other witness—was in

---

[4] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Aug. 6, 2025).

the hallway during the incident involving the aggressive conduct.[5] And Aigbekaen has not presented any facts to suggest that the outcome of his hearing would have been different if he had been permitted to call Bartley or someone else. In other words, even if this factual dispute were resolved in Aigbekaen's favor, he was not harmed by this alleged error. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (If a procedural due process violation occurred, the court must then determine whether the errors were harmless.); *see also Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (applying harmless error analysis to due process claim).

Additionally, Aigbekaen asserts that he requested video evidence to corroborate his version of the incident, but that he was not allowed to present such evidence. He also claims his staff representative was unable to view the video beforehand. Conversely, in an affidavit, the DHO certified that Aigbekaen's staff representative was permitted to review the video. (Doc. 26-1). In any event, as reflected in the DHO's report, the DHO reviewed the video evidence, which supported his findings. To the extent Aigbekaen argues he should have been able to view the video personally, the requirement to disclose exculpatory evidence carries an exception against the disclosure of material that would unduly threaten institutional concerns. *Jones*, 637 F.3d at 847. First, the video is not exculpatory. Second, typically, BOP does not allow inmates to view video evidence because they could become aware of the capabilities of the system and learn how to evade monitoring in the future. Nevertheless, the DHO reviewed the video evidence and provided a written description of its contents in the

---

[5] Given the video, Aigbekaen's arguments on this point become even weaker, as a prisoner does not have the right to call a witness whose testimony would be irrelevant, repetitive, or unnecessary. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Pannell v. McBride*, 306 F.3d 499, 502-03 (7th Cir. 2002).

disciplinary report.

Aigbekaen also claims that he was denied access to the courts, because he was not allowed to appeal the DHO's report, which he only received after multiple inquiries. But the record shows he did appeal the decision and receive the report. It also appears that delivery of the report was delayed due to his transfer.

Lastly, Aigbekaen highlights his mental illness and incompetency. Other than his conclusory statements to this effect, he presents no evidence of such mental illness or incompetency, and his pleadings in this action have been coherent, demonstrating an understanding of the constitutional protections required in the prison disciplinary setting. Neither Aigbekaen nor his staff representative, a chief psychiatrist, raised this concern during the disciplinary proceedings or in his administrative appeals. As such, this claim has not been exhausted, and the Court declines to consider it. Even so, due process in a disciplinary hearing does not require provision of a psychology referral. *McMurrer v. Sproul*, No. 21-cv-853-JPG, 2022 WL 17082520, at *4 (S.D. Ill. Nov. 18, 2022); *see also Wolff,* 418 U.S. at 564-66 (finding that "failure to provide a psychology referral does not constitute a due process violation").

## Conclusion

For these reasons, Raymond Aigbekaen's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**, all pending motions are **DENIED as moot**, and this action is **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment and close this case.

It is not necessary for Aigbekaen to obtain a certificate of appealability from this

disposition of his § 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If Aigbekaen wishes to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B)(iii). Aigbekaen must list each issue he intends to appeal in the notice of appeal and his motion for leave to appeal *in forma pauperis*, if he chooses to file one. *See* FED. R. APP. P. 24(a)(1)(C). If Aigbekaen chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2).

A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal, unless filed within the time allowed for filing a motion under Rule 59. FED. R. APP. P. 4(a)(4)(A)(vi).

**IT IS SO ORDERED.**

DATED:   August 7, 2025

                                                                                        _____
                                                                                        **NANCY J. ROSENSTENGEL**
                                                                                        **Chief U.S. District Judge**