## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RAYMOND IDEMUDIA AIGBEKAEN,**

**Petitioner,**

v.

**ACTING WARDEN OF FCI GREENVILLE,**

**Defendant.**

Case No. **3:22-CV-2599-NJR**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Reconsideration filed by Petitioner Raymond Idemudia Aigbekaen, a federal prisoner in the Bureau of Prisons (BOP).[1] (Doc. 51). On August 7, 2025, the Court denied Aigbekaen's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, which he had filed to challenge the disciplinary loss of 27 days of good conduct credit. (Doc. 46). Aigbekaen now asks the Court to reconsider that decision. For the reasons set forth below, the motion is denied.

---

[1] Also pending is a March 30, 2026 filing. (Doc. 52). This entry, which is somewhat incompletely labeled a "Motion for Status" on the docket, is labeled by Aigbekaen as both a "Request for Docket Sheet & case update" and "Notice of Appeal." First, the Court notes that under Rule 4(a)(4)(B)(i) of the Federal Rules of Appellate Procedure, this Court retains jurisdiction to decide the motion to reconsider despite the notice of appeal. *E.g.*, *Rose v. Ayala*, No. 24-cv-405, 2025 WL 440415, at *1 (E.D. Wis. Jan. 24, 2025) ("Under Fed. R. App. P. 4(a)(4)(B)(i), this court retains jurisdiction to decide the motion for reconsideration, and the notice of appeal will not take effect until the court decides the reconsideration motion."). Second, the Court will grant Aigbekaen's request for a copy of the docket sheet. He also requests that the Court return to him the copy of a rating decision from the United States Department of Veterans Affairs that he included in the filing, as he sent the Court his only copy. *Id.* The Court grants this request as well and directs the Clerk of Court to mail Aigbekaen both a copy of the docket sheet and a copy of his March 30, 2026 filing. Further, for the purposes of docket management and to prevent anything from slipping through the cracks, the Court directs the Clerk of Court to re-file the March 30, 2026 filing on the docket as a "Notice of Appeal" and to thereafter comply with the Federal Rules of Appellate Procedure with respect to such notices.

### BACKGROUND

A full exposition of this case's background can be found in this Court's order denying Aigbekaen's petition (Doc. 46, at 1–6), but the Court will provide a brief summary here. After an altercation with prison officials on his way to education at Federal Correctional Institution (FCI) Loretto on May 26, 2022, Aigbekaen was charged in an incident report with two offenses: refusing to obey an order and assaulting without serious injury (attempting). *Id.* at 2, 4. The next day, the matter was heard by the Unit Discipline Committee (UDC) and then referred to the Discipline Hearing Officer (DHO). (Doc. 26-2, at 5). The matter was then suspended to allow the incident report to be rewritten. (Doc. 46, at 4–5; Doc. 26-2, at 10–13). The rewritten incident report was served on Aigbekaen on June 6, 2022. (Doc. 46, at 5; Doc. 26-2, at 12). The UDC reheard the matter and again referred it to the DHO. (Doc. 46, at 5; Doc. 26-2, at 11). On July 13, 2022, the DHO held a hearing, during which he reviewed the officers' reports, Aigbekaen's statements, the statements of witnesses, and video footage of the incident. (Doc. 46, at 5–6; Doc. 26-2, at 16–20). The DHO found Aigbekaen to have committed the conduct as charged and sanctioned him with, *inter alia*, the loss of 27 days of good conduct credit. (Doc. 46, at 6; Doc. 26-2, at 19).

Aigbekaen petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241, seeking the restoration of the 27 days of good conduct credit (Doc. 1; *see* Doc. 46, at 1). He argued he was innocent (i.e., that the DHO's finding that he had committed the charged conduct was wrong) and that his procedural due process rights had been violated by the disciplinary proceedings. (Doc. 46, at 7–8). Aigbekaen also asserted that he was mentally

Page 2 of 12

ill and therefore not culpable for his actions. *Id.* at 8. The Court applied the applicable "some evidence" standard under *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). (Doc. 46, at 8–9). Because the DHO had reviewed video footage of the incident, which corroborated the incident report and the officers' accounts and contradicted Aigbekaen's version of events, the Court found that the DHO's findings were "obvious[ly]" supported by "some evidence." *Id.* at 8–9. The Court then rejected his procedural due process arguments. *Id.* at 9–13. The errors he asserted either did not constitute due process violations, were unsupported by the record, or would have been harmless even if Aigbekaen's claims were accurate. *Id.* Finally, the Court rejected his arguments concerning his mental illness for a failure to exhaust his administrative remedies as to that issue. *Id.* at 13. Aigbekaen now moves for relief under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. (Doc. 51).

## LEGAL STANDARD

Both Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure authorize the Court to reconsider its final orders and judgments in certain circumstances. The applicable rule "depends on the substance of the motion, not on the timing or label affixed to it." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (citing *Borrero v. City of Chicago*, 456 F.3d 698, 701-02 (7th Cir. 2006)). Nevertheless, a motion to reconsider filed more than 28 days after entry of the challenged order "automatically becomes a Rule 60(b) motion." *Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994) (citing *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992)).

A motion to alter or amend judgment filed pursuant to Rule 59(e) may only be

granted if a movant shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 589 (7th Cir. 2012)). "'[M]anifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted).

Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional circumstances." *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (citing *Dickerson v. Board of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). The rule "allows a party to seek relief from final judgment and reopen a case based on mistake or excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025) (citing FED. R. CIV. P. 60(b)(1)–(5)). It "also includes a 'catchall' provision that allows a district court to reopen a case 'for other reason that justifies relief,'" though only "'when Rules 60(b)(1) through (b)(5) are inapplicable.'" *Id.* at 210–11 (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)).

Rule 60(b) exists "to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). It is also not an appropriate vehicle for rehashing old arguments or for presenting arguments that should have been raised before the court made its decision. *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 837 (7th Cir. 2005); *Rutledge*

Page 4 of 12

*v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000). "[L]egal error is not a proper ground for relief under Rule 60(b)," and "[a] contention that the judge erred with respect to materials in the record is not within Rule 60(b)'s scope." *Gleash v. Yuswack*, 308 F.3d 758, 761 (7th Cir. 2002).

### DISCUSSION

The Court begins by noting that Aigbekaen cannot pursue relief through Rule 59(e) at all. Judgment was entered on August 7, 2025. (Doc. 47). Any motion under Rule 59(e) was therefore due on September 4, 2025. FED. R. CIV. P. 59(e). This deadline is not extendable. FED. R. CIV. P. 6(b)(2). Aigbekaen's motion, however, was not received until October 9, 2025 (Doc. 51)—well past the applicable deadline.

Even if the Court were to assume that Aigbekaen could get the benefit of the prison mailbox rule, his motion would still be untimely under Rule 59(e). Under the prison mailbox rule, a *pro se* prisoner's motion is considered "filed" on the date it is delivered to prison officials. *See, e.g.*, *Edwards v. United States*, 266 F.3d 756, 757–58 (7th Cir. 2001). But the motion is dated September 6, 2025. (Doc. 51, at 3). Thus, even if Aigbekaen had signed his motion and immediately handed it to prison officials, it would still have been filed two days too late for consideration under Rule 59(e).[2] His motion, therefore, must be

---

[2] Because the motion to reconsider was not filed within the timeline for consideration under Rule 59(e), there are consequences for Aigbekaen's "notice of appeal" (Doc. 52), as well. Even to the extent that the filing constitutes a valid notice of appeal, it is untimely. Under Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, the notice of appeal was due 60 days after entry of judgment, or October 6, 2025. The notice of appeal was not filed until March 30, 2026. And while Rule 4(a)(4)(A)(v)–(vi) provides for that deadline to be tolled while a district court considers a motion under Rules 59 or 60, that rule only applies when the motion was filed within the deadline to file a motion under Rule 59(e), i.e., 28 days. Because Aigbekaen missed that deadline when he filed his motion to reconsider, Rule 4(a)(4)(A) is inapplicable here, and his notice of appeal is untimely.

treated as one made pursuant to Rule 60(b). *E.g.*, *Hope*, 43 F.3d at 1143 (citing *Deutsch*, 981 F.2d at 301).

Aigbekaen's motion raises five grounds for relief from the judgment denying his petition:

Ground I: the Court committed a mistake of fact when it wrote "that the DHO suspended the matter pending a rewrite for clarification" by rewriting the incident report; instead, the "operations lieutenant" who suspended the matter for a rewrite. (Doc. 51, at 1).

Ground II: the Court committed a mistake of fact when it determined that there was some evidence supporting the DHO's finding that he had committed an "attempt." *Id.*

Ground III: the Court committed a mistake of law when it did not credit his argument that the second UDC hearing was untimely and therefore violated his rights. *Id.* at 1–2.

Ground IV: there is "newly discovered evidence" of his mental illness, which he argues contributed to the events at issue and are not being treated by the BOP, and he should not be punished for his mental illness. (Doc. 51, at 2–4; Doc. 52, at 1–6).

Ground V: Respondent engaged in fraud by presenting "false testimony" from the DHO as to the contents of security camera footage and as to the presence of a witness at the DHO hearing. Respondent knew this evidence was false. (Doc. 51, at 2–3).

Grounds I, II, and III are cognizable under Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect"); Ground IV is cognizable under Rule 60(b)(2) ("newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)");[3] and Ground V is cognizable under Rule 60(b)(3)

---

[3] Aigbekaen also invokes Rule 60(b)(6) ("any other reason that justifies relief") with respect to Ground IV. (Doc. 51, at 4).

("fraud . . . misrepresentation, or misconduct by an opposing party"). Aigbekaen also expressly invokes Rule 60(b)(6) ("any other reason that justifies relief") with respect to his mental illness (Ground IV).

None of these grounds satisfies the demanding standard for relief under Rule 60(b). The Court addresses each in turn.

First, Grounds I, II, and III merely argue that the Court was mistaken in its original factual and legal conclusions, which is insufficient to justify relief. Absent circumstances not present here,[4] "a party invoking Rule 60(b) must claim grounds for relief 'that could not have been used to obtain a reversal by means of a direct appeal.'" *Banks v. Chi. Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014) (quoting *Kiswani v. Phx. Sec. Agency, Inc.*, 584 F.3d 741, 743 (7th Cir. 2009)). "[E]rrors of law and fact generally do not warrant relief under Rule 60(b)(1) and certainly do not require such relief." *Id.* (first citing *Gleash*, 308 F.3d at 761; and then citing *Talano v. Nw. Med. Fac. Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001)).

In Ground I, Aigbekaen argues that the Court (*see* Doc. 46, at 5) wrongfully attributed the suspension of the original incident report for a rewrite to the DHO; instead, Aigbekaen claims a different officer "ordered a rewrite of the incident report." (Doc. 51, at 1). Even if this claim were not contradicted by the record,[5] it is so baseless it borders

---

[4] *See Mendez v. Republic Bank*, 725 F.3d 651, 657–61 (7th Cir. 2013) (explaining that a district court *may*, in its discretion, grant relief under Rule 60(b) to correct errors that could have been corrected on appeal when there is no concern about using Rule 60(b) to get around the time-limit on appeal, but that it is not *required* to do so).

[5] The record indicates that the "incident report was previously suspended *by the DHO pending Re-Write*." (Doc. 26-2, at 12 (emphasis added)).

on frivolous. Aigbekaen makes no attempt to explain how this alleged "mistake" of fact would justify relief: the question of who ordered the incident report to be rewritten, or who suspended it while the rewrite was pending, has no conceivable bearing on whether some evidence supports the DHO's ultimate findings, or whether Aigbekaen was afforded due process.

Aigbekaen's Ground II suggests that the Court erred when it determined that some evidence supported the DHO's findings on the attempt charge. (Doc. 51, at 1). The Court already explained, however, that the DHO's findings were supported by the incident report, the officer statements, and the video evidence. Even if Aigbekaen were correct that he genuinely did not "attempt" to assault anyone, the Court's inquiry was *not* whether the DHO was correct. It was whether the DHO's decision was supported by "some evidence." *Hill*, 472 U.S. at 455. Aigbekaen argues that "the Court can clearly see on camera that no such attempt was ever intended or made" (Doc. 51, at 1), but this argument is no more convincing than it was the first time around. (*See* Doc. 1, at 9 (arguing "[t]he video would most definitely absolve [Aigbekaen] of any guilt"); Doc. 46, at 2–4, 8 (explaining why the video provides some evidence in support of the DHO's findings and contradicts Aigbekaen's version of events)).

In Ground III, Aigbekaen once again attempts to revive a rejected argument. He merely reiterates the claim from his petition that the UDC hearing was untimely (*Compare* Doc. 51, at 1–2, *with* Doc. 1, at 3). For the second time, the Court rejects this argument: even if it were true that the UDC hearing was not held within the time period prescribed by prison regulations, Aigbekaen "is not constitutionally entitled to adherence to these

timelines. Due process merely requires that the offender be given written notice of the alleged violations at least 24 hours before a disciplinary hearing." (Doc. 46, at 10 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974))).

None of these alleged mistakes are instances "where 'the [c]ourt has patently misunderstood the party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension.'" *Alexan v. Burke*, 62 F. Supp. 3d 784, 788 (N.D. Ill. 2014) (alterations in original) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Instead, they are attempts to quibble over insignificant details (Ground I) or to rehash the exact arguments the Court has already rejected (Grounds II and III). So even if Aigbekaen's arguments in Grounds I, II, and III were correct, he would still not be entitled to relief.

The Court similarly denies Aigbekaen relief on Ground IV, whether considered under Rule 60(b)(2) or 60(b)(6). Ground IV concerns Aigbekaen's mental illness: he argues that it contributed to the incident at issue and that he should not be punished for it. (Doc. 51, at 2–4; Doc. 52). First, as this Court explained in its original decision, Aigbekaen failed to administratively exhaust any claims based on mental illness. (Doc. 46, at 13). He offers nothing to explain or excuse that failure in his arguments for reconsideration, so the Court denies relief on that basis alone.

Second, Ground IV does not provide "newly discovered evidence": although Aigbekaen's motion contains documentation of his mental illness that was not previously before the Court, *see id.*, the evidence dates from 2023 and 2024. (Doc. 52, at 3; Doc. 51, at 4). He does not even attempt to argue that he did not have this evidence at the time of

Page 9 of 12

the judgment (August 7, 2025); instead, he merely complains that "[t]he Court did not consider [his] mental illness." (Doc. 51, at 2). Dissatisfaction with the Court's consideration of an argument does not make evidence supporting that argument "newly discovered." *See, e.g.*, *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 920–21 (N.D. Ill. 2002) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)) (explaining what a moving party must show under Rule 60(b)(2)).

Finally, because the evidence is not "newly discovered," Ground IV must be analyzed under Rule 60(b)(6). But, as explained above, Aigbekaen already argued that his mental illness should be considered by the Court in his original petition. (Doc. 1, at 10). And this Court already rejected the argument. (Doc. 46, at 13). Notwithstanding the attempt to rehash claims on which he has already lost, the Court denies Aigbekaen relief on Ground IV.

In Ground V, Aigbekaen argues that Respondent engaged in fraud in its submissions to the Court. (Doc. 51, at 2–3). The argument proceeds in three steps: first, Aigbekaen asserts that the DHO lied about (a) the contents of the video and (b) the presence of Aigbekaen's witness at the DHO hearing. *Id.* at 2. Second, Respondent knew the DHO had lied because Respondent (a) had seen the video and (b) would have been aware that Aigbekaen's witness was released from BOP custody the day before the hearing.[6] *Id.* at 2–3. Third, Respondent submitted the record of the DHO's findings (a "bogus document[]," *id.* at 2), meaning Respondent submitted materials he knew to be

---

[6] For a discussion of the factual discrepancy regarding the presence of Aigbekaen's witness (which was ultimately immaterial to the outcome), see pages 11 and 12 of this Court's final decision. (Doc. 46, at 11–12).

false, *see id* at 2–3. Therefore, "[t]he impartial functions of the Court have been directly corrupted by this fraud," meaning his "27 good days should be restored." *Id.* at 3.

To obtain relief under Rule 60(b)(3), Aigbekaen would need to prove three things: (1) that Respondent committed fraud, misrepresentation, or misconduct; (2) that his claim was meritorious, i.e., that he would have won on at least one of his claims; and (3) that because of Respondent's fraud, he was prevented from fully and fairly presenting his case. *E.g.*, *Troyer v. Nat'l Futures Ass'n*, No. , 2020 WL 881552, at *1 (N.D. Ind. Feb. 24, 2020) (citing *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699 (7th Cir. 1995)).

Aigbekaen cannot satisfy these requirements with respect to either instance of alleged fraud. First, even if the DHO had indeed lied about the contents of the video, and even if Respondent knew he had done so, *the Court itself reviewed the video*. (Doc. 46, at 2–4, 8–9). Even if Respondent's representations about the video were wholly false, the Court did not rely on the DHO's description of the video. Accordingly, the representations (fraudulent or otherwise) could not have prevented Aigbekaen from fully and fairly presenting his case. The Court's independent review of the video and the other evidence before the DHO led to its determination that the DHO's findings were supported by some evidence.

Second, Aigbekaen cannot satisfy these three prongs even as to the presence or absence of his witness. Even assuming, for the sake of argument, that Aigbekaen could prove that Respondent had committed fraud by "clear and convincing evidence," *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010) (citations omitted), his underlying claim was not meritorious. He had argued that his due process rights had been violated by an

inability to call witnesses to testify on his behalf. (*See* Doc. 46, at 11–12). But the Court rejected that argument: the video proved the testimony he had hoped to solicit would not have been exculpatory.[7] *Id.* Accordingly, any error was harmless, and he was not entitled to relief. Because Aigbekaen cannot prove he would have succeeded in his claim but for the alleged fraud, he is not entitled to relief under Rule 60(b)(3) on Ground V.

### CONCLUSION

For these reasons, the Motion for Reconsideration filed by Petitioner Raymond Idemudia Aigbekaen (Doc. 51) is **DENIED**. His Motion for Status (Doc. 52) is **DENIED as moot**. The Clerk of Court is **DIRECTED** to mail Aigbekaen both a copy of the docket sheet and a copy of his filing of March 30, 2026 (Doc. 52). The Clerk of Court is further **DIRECTED** to re-file the March 30, 2026 filing on the docket as a "Notice of Appeal" and to thereafter comply with the Federal Rules of Appellate Procedure with respect to such notices.

**IT IS SO ORDERED.**

**DATED:   June 25, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[7] The witness Aigbekaen had hoped to call was not present during the incident. (Doc. 46, at 11–12). In fact, no inmates or witnesses other than the prison officials had been present. *Id.* So no matter who Aigbekaen called to testify, it would not have benefitted him at the disciplinary hearing; ergo, any error was harmless. *Id.*